IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JEFFREY PETERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:18-CV-158-SMD |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Jeffrey Peters ("Peters") applied for disability insurance benefits under Title II and for supplemental security income under Title XVI of the Social Security Act ("the Act") alleging a disability date of March 31, 2013. (R. 149-57). The application was initially denied. (R. 84-93). A hearing was held before the Administrative Law Judge ("ALJ") (R. 33-63), who rendered an unfavorable decision on January 18, 2017. (R. 16-32). The Appeals Council denied Plaintiff's request for review. (R. 1-7). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 12); Def.'s Consent to Jurisdiction

(Doc. 13). After careful scrutiny of the record and briefs, for reasons herein explained, the undersigned concludes that the Commissioner's decision is due to be AFFIRMED.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)); *Foote,* 67 F.3d at 1560 (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)).

2

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560 (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence*." Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth,* 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id*.; *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor,* 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a

claim for DIB and a claim for SSI are identical. *See Strickland v. Harris*, 615 F.2d 1103, 1105-06 (5th Cir. 1980). Therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen,* 799 F.2d 1455, 1456 n.1 (11th Cir. 1986). Applicants under DIB and SSI must prove "disability" within the meaning of the Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. See 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step four. *See Phillips v. Barnhart,* 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step one through Step four. At Step five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and non-exertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

## IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was forty-six years old at the time of his alleged onset date. (R. 27, 40). Plaintiff has a limited education, having quit school after the ninth grade. (R. 27, 42). Plaintiff has past relevant work as a truckdriver. (R. 27, 44). In evaluating Plaintiff's application, the ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. (R. 20-22). The ALJ found that Plaintiff met the insured status requirements of the Act, had not engaged in substantial gainful activity since the alleged onset date, and had the severe impairments of heart disease and degenerative disc disease. (R. 21). The ALJ found that Plaintiff's severe impairments constitute more than slight abnormalities and have had more than a minimal effect on Plaintiff's ability to work. *Id.* The ALJ also found that Plaintiff had non-severe impairments of insomnia, hypertension, and obesity which had no more than a minimal effect on Plaintiff's ability to work. (R. 22). The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 22-23).

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except he could "occasionally stoop and needs to avoid concentrated exposure to heat and cold." (R. 23). The ALJ next compared Plaintiff's RFC to the physical demands of his past relevant work and found that he was unable to perform such work. (R. 27). At the final step of the sequential evaluation, the ALJ found, with the benefit of testimony from a vocational expert (R. 66, 68-69), that there were jobs existing in significant numbers in the national economy that Plaintiff can

perform, such as cashier, assembler, and information clerk. (R. 27-28). The ALJ therefore found that Plaintiff had not been disabled at any time from March 31, 2013, the alleged onset date, through January 18, 2017, the date of the decision. (R. 28).

## V. MEDICAL HISTORY

Plaintiff's medical records begin with an encounter summary from February 14, 2012 indicating he had been seeing his primary care physician, Dr. Donnette Bish, DO, since December 2008 for "essential hypertension benign." (R. 327). The first physical examination in the record is by Dr. Bish dated June 4, 2012. (R. 317-18). Dr. Bish's physical examination showed that no cardiovascular or musculoskeletal symptoms were present. Dr. Bish noted that Plaintiff had a normal heart rate and rhythm but had an elevated blood pressure of 157/94. *Id.* Plaintiff's Lipid Panel showed normal cholesterol levels and a negative risk factor for coronary heart disease. *Id.* Dr. Bish assessed benign essential hypertension. *Id.*

Plaintiff was treated for a myocardial infarction on October 8, 2012. (R. 242). Plaintiff underwent balloon angioplasty and had a stent implanted. *Id.* The attending cardiologist, Dr. Faye Rao, MD, noted Plaintiff had no arrhythmia and ambulated without difficulty on the day of discharge. *Id.* Plaintiff was discharged in stable condition and was clear to return to work without restrictions. *Id.* Plaintiff was seen after his discharge by Dr. Bish. (R. 305). Plaintiff reported that he was "feeling much better" and did not have any chest pain. *Id.* Dr. Bish noted a normal heart rate and rhythm and regular heart rate and blood pressue. *Id.* Plaintiff was seen again by Dr. Rao on November 20, 2012. (R. 259). Dr. Rao's physical examination noted that Plaintiff was resting comfortably with no

7

acute distress. *Id.* Dr. Rao also noted regular heart rate and rhythm. *Id.* Plaintiff had a follow-up appointment with Dr. Rao on May 21, 2013. (R. 256). Plaintiff noted intermittent chest pain, but Dr. Rao noted that Plaintiff was "overall doing well" and noted normal heart rate and rhythm. *Id.* Dr. Rao scheduled a follow-up six months later. *Id.*

Although Plaintiff's medical records indicate he had seen Dr. Bish in December 2008 and July 2009 for lumbago, the first examination evidence appears in a visit to Dr. Bish on October 22, 2013 where Plaintiff complained of lower back pain from cutting wood earlier that day. (R. 283). This visit is seven months after Plaintiff's alleged disability onset date. (R. 19). Although Dr. Bish recorded "muscle spasm of the lower back," he reported no other musculoskeletal dysfunction. (R. 284). Dr. Bish also noted there was no previous history of motor disturbances, neurological symptoms, or polyarticular joint pain. (R. 285). Dr. Bish made no diagnosis nor did he recommend any treatment plan for the lower back pain.

Plaintiff had another follow-up appointment with Dr. Rao on February 18, 2014. Plaintiff reported "overall feeling well" from a cardiac standpoint. (R. 252). Dr. Rao also noted that Plaintiff was "wanting to know if he qualifies for disability from a cardiac standpoint." *Id.* Plaintiff denied experiencing any chest paint, irregular heartbeat, shortness of breath or lightheadedness. *Id.* Dr. Rao's physical examination showed normal heart rate and rhythm with no murmurs or cardiac thrills present. (R. 253). Dr. Rao assessed that Plaintiff's coronary artery disease was stable. *Id.* Dr. Rao also noted that Plaintiff had a normal gait and was able to stand without difficulty. *Id.*

8

Plaintiff had a consultative medical examination in relation to his disability application with Dr. Sam Banner, DO, on April 14, 2014. (R. 345-352). Dr. Banner's physical examination noted no back spasms or deformity and normal range of motion. (R. 348). Dr. Banner also observed that Plaintiff had a normal gait and demonstrated no pain or difficulty getting on and off the examination table. *Id.* Dr. Banner also reported no motor weakness, normal reflexes, and no muscle atrophy. *Id.*

Plaintiff saw Dr. Bish for a check up on May 15, 2014. (R. 270-75). Plaintiff complained of mid-back pain. (R. 270). Dr. Bish's physical examination noted that Plaintiff's "middle back exhibited tenderness on palpation of the left paraspinal region." (R. 271). Dr. Bish indicated that "[a] motor exam demonstrated no dysfunction." *Id.* Dr. Bish recorded a normal heart rate and rhythm but an elevated blood pressure and pulse. *Id.* Dr. Bish made no diagnosis nor did he recommend any treatment plan for the middle back pain. *Id.*

Plaintiff saw Dr. Rao for a follow up on April 7, 2015. (R. 342-44). Plaintiff denied any chest pain, palpitation, or shortness of breath. (R. 342). Plaintiff did not express any back pain but did indicate he "wanted to apply for disability from a cardiac standpoint." *Id.* Dr. Rao noted a regular heart rate and rhythm and also recorded a normal motor examination with Plaintiff having a normal gate and the ability to stand without difficulty. (R. 343). Dr. Rao indicated Plaintiff was "stable" from a cardiac standpoint and scheduled a follow-up for one year later. (R. 343-44).

## VI. PLAINTIFF'S ARGUMENT

Plaintiff argues that the ALJ erred by affording "little weight" to the opinions of Dr. Bish and Dr. Banner but affording "great weight" to the opinion of Dr. March. (Doc. 17) at 1. Plaintiff further argues that the ALJ erred by discounting Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of his symptoms. *Id.* Finally, Plaintiff argues that the ALJ erred by failing to consider Plaintiff's age when assessing his vocational profile. *Id.* The undersigned addresses each of these issues in turn.

## VII. ANALYSIS

### A. Opinion of Dr. Bish

Plaintiff argues that the ALJ erred by affording "little weight" to the opinion of Dr. Bish. (Doc. 17) at 1. Plaintiff asserts that, as his primary care physician, Dr. Bish's opinion should have been afforded at least "deferential" weight. *Id.* at 6. Plaintiff avers that, in discounting the opinion of Dr. Bish, the ALJ never addressed the "treating physician rule"[1] nor did he evaluate Dr. Bish's opinion under the required regulatory factors.[2]

"Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.'" *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176,

---

[1] According to the Act, "[i]f we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 CFR § 404.1527(c)(2).

[2] The Act states: "When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion." 20 CFR § 404.1527(c)(2).

1179 (11th Cir. 2011) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); see also 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241). "With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Id.* (quoting *Phillips*, 357 F.3d at 1240-41).

Here, the ALJ gave "little weight" to the opinion of Dr. Bish because it was "not supported by the objective medical and other evidence." (R. 25). The ALJ noted that Dr. Bish opined that Plaintiff "could not stand or sit 20 to 30 minutes and could not perform sustained work." *Id.* The ALJ also noted that Dr. Bish opined that Plaintiff could "perform work at less than the sedentary exertional level," and that Plaintiff "could never bend, stoop, or reach overhead." *Id.*

However, the ALJ observed that the record "shows little treatment for his back condition, as well as relatively mild clinical findings upon consultative examination." *Id.* The ALJ further observed that the record indicates Plaintiff's "heart disease is stable" and "he admittedly is able to perform a wide range of daily activities that require significant physical exertion, such as fishing and mowing grass." *Id.*

The undersigned finds that the ALJ has clearly articulated good cause to disregard the opinion of Dr. Bish. Regarding Plaintiff's degenerative disc disease impairment, there is no evidence in the record of a treatment plan, physical therapy, or other treatment

11

measures. When Dr. Bish examined Plaintiff on October 22, 2013, he noted "muscle spasm of the lower back," but reported no other musculoskeletal dysfunction. (R. 284). Importantly, Dr. Bish made no diagnosis nor did he recommend any treatment plan for Plaintiff's lower back pain. Likewise, when Dr. Bish examined Plaintiff on May 15, 2014, he indicated that "[a] motor exam demonstrated no dysfunction" and he made no diagnosis, nor did he recommend any treatment plan for Plaintiff's middle back pain. (R. 270-75).

Regarding Plaintiff's heart disease, Dr. Bish's opinion is likewise inconsistent with the medical evidence. When Plaintiff saw Dr. Rao on April 7, 2015, Plaintiff denied any chest pain, palpitation, or shortness of breath, and Dr. Rao indicated Plaintiff was "stable" from a cardiac standpoint and scheduled a follow-up for one year later. (R. 323-44). Thus, the ALJ was correct when he concluded that Dr. Bish's opinion from his medical source statement (R. 355-60) was not supported by the medical evidence. (R. 25). Hence, the ALJ did not err by affording "little weight" to the medical opinion of Dr. Bish.

## B. Opinion of Dr. Banner

Plaintiff argues that the ALJ erred by affording "little weight" to the opinion of Dr. Banner, the consultative medical examiner. (Doc. 17) at 1. Plaintiff asserts that the ALJ's findings were arbitrary and that he failed to evaluate Dr. Banner's opinion under the required regulatory factors. Generally, the ALJ will give more weight to the medical opinion of a source who has examined an applicant than to the opinion of a non-examining source. 20 CFR § 404.1527(c)(1). However, an ALJ may reject any medical opinion if it is not supported by the evidence. *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

Here, the ALJ afforded "little weight" to the opinion of Dr. Banner because it was "neither supported by the medical evidence, nor his own findings and observations." (R. 26). The ALJ noted that, although Dr. Banner opined that Plaintiff could only "occasionally handle, finger, and feel with the right hand," his medical examination noted that Plaintiff "had no deficiencies with grip or fine and gross motions. . . ." *Id.* Additionally, although Dr. Banner opined that Plaintiff could "never stoop, crouch, kneel, or crawl," his medical examination noted that Plaintiff had "no muscle atrophy or gait issues." *Id.* Thus, the ALJ was correct when he concluded that Dr. Banner's opinion from his medical source statement (R. 383-88) was not supported by his own records and the medical evidence as a whole. (R. 26). Hence, the ALJ did not err by affording "little weight" to the medical opinion of Dr. Banner.

**C. Opinion of Dr. March**

Plaintiff argues that the ALJ erred by affording "great weight" to the opinion of Dr. March. (Doc. 17) at 1. Plaintiff asserts that, as a non-examining source, Dr. March's opinion should have been afforded "little weight." *Id.* at 10. Additionally, Plaintiff argues that the ALJ did not consider the regulatory factors when evaluating Dr. March's opinion. *Id.* While the opinion of a non-examining physician is generally afforded less weight than the opinion of an examining physician and, thus, does not constitute substantial evidence, the opinion of a non-examining physician—when consistent with the well-supported opinions of the examining physicians or other medical evidence in the record—may be substantial evidence and, thus, afforded greater weight. *See Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Edward ex rel. J.P. v. Astrue*, 2011 WL 3568801, at *3

13

(M.D. Ala. Aug. 12, 2011); *see also Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (finding the opinions of non-examining physicians do not constitute substantial evidence *where they contradict the reports of treating physicians*) (emphasis added); *Belvin v. Colvin*, 2014 WL 1320227, at *3 (M.D. Ala. March 28, 2014).

Here, the record shows that the ALJ carefully considered all the evidence before him and did not rely exclusively on the opinion of Dr. March. (R. 23-26). While the ALJ afforded "little weight" to the *opinions* of Plaintiff's examining physicians, the ALJ found the objective medical examination *records* of the physicians consistent with each other, with other medical evidence, and Plaintiff's own testimony. *Id.* The ALJ found that Dr. March's opinion was "supported by the objective medical evidence, which indicates only mild findings of limitations." (R. 25). The ALJ noted that there was little evidence in the record of treatment for Plaintiff's degenerative disk disease (R. 24), and that Plaintiff's heart disease was reported as stable with no imposed limitations other than limiting exposure to heat and cold. (R. 25-26). Further, Plaintiff's own testimony regarding his daily activities "suggested a greater degree of functional capability than claimed." (R. 24). The ALJ concluded that, based on the medical evidence and Plaintiff's testimony, the restrictions given in the various opinions were "impliedly temporary restrictions" that appeared "during a period of exacerbation." (R. 25). Thus, the ALJ found that Dr. March's opinion that Plaintiff retained the residual functional capability to perform a range of light work was consistent with the objective medical evidence. Therefore, the ALJ did not err by affording "great weight" to the opinion of Dr. March.

**D. Plaintiff's Subjective Statements**

Plaintiff argues that the ALJ erred by discounting Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of his symptoms. (Doc. 17) at 1. Plaintiff asserts that his statements regarding his symptoms are—contrary to the ALJ's opinion—supported by substantial evidence. *Id.* at 12-13. In his administrative hearing, Plaintiff testified that he stopped working as a truck driver because he could no longer sit for long periods of time. (R. 44). Plaintiff testified that he had chronic back and neck pain and he could not lift heavier objects. (R. 44-48). He also testified that he could not walk much further than 50 yards before he experiences chest pain. (R. 47-49). However, Plaintiff testified that he could do some light work such as mowing the yard (R. 43; 53), cleaning the house (R. 50), and shopping for groceries (R. 50).

The ALJ found—and the undersigned agrees—that, although Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms were not supported by the medical evidence. (R. 23-24). In addition to the previously-noted lack of evidence of treatment for chronic conditions, the ALJ observed that Plaintiff's description of his daily activities was not consistent with someone who is disabled. (R. 24). Specifically, the ALJ noted that

> [t]he claimant testified that he could perform a wide variety of activities, including attending to his personal care, visiting family, grocery shopping, fishing, cooking, and cleaning. He also testified that he helped his sister maintain rental property by mowing approximately two acres of land and handling small repairs. These activities require a significant degree of physical exertion, such as lifting, walking, and sitting, which suggest a greater degree of functional capability than claimed. Further, he admittedly

> remains capable of independent operation of an automobile, albeit for short distances, which undoubtedly requires a significant level of sitting, arising from a seated position, and the use of hand and foot controls, which suggests a greater degree of functional capability than claimed.

(R. 24). Based on Plaintiff's own statements and the medical record, the ALJ determined that Plaintiff retained sufficient RFC and was, therefore, not disabled (R. 23;28). The undersigned finds that the ALJ specifically articulated his reasons discounting Plaintiff's subjective statements regarding his symptoms and that those reasons are based on substantial evidence. Therefore, the ALJ did not err by discounting Plaintiff's subjective statements.

**E. Plaintiff's Age**

Plaintiff argues that the ALJ erred by failing to consider Plaintiff's age when assessing his vocational profile. (Doc. 17) at 1. Plaintiff asserts that, because he is over fifty years of age, his is considered disabled even if he could perform a full range of sedentary work. *Id.* at 15. However, Plaintiff does not argue that he would be considered disabled if he were over the age of fifty and able to perform a slightly reduced range of light work—which is the RFC found by the ALJ. (R. 26). Plaintiff relies on the opinion of Dr. Banner, who concluded that Plaintiff was limited to less than sedentary work. (R. 383-88). However, as previously discussed, the ALJ afforded Dr. Banner's opinion "little weight" and, relying on other evidence, concluded Plaintiff retained the ability to perform a range of light work. (R. 26-28). Hence, the undersigned concludes the ALJ did not fail to consider Plaintiff's age when assessing his vocational profile.

## VIII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court AFFIRMS the Commissioner's decision. A separate judgment will be entered.

DONE this 8th day of August, 2019

/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE